## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **RACHEL FORE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 12-1048-JWL** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security income (SSI) under sections 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error in the final decision of the Commissioner, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

## I.    Background

Plaintiff applied for SSI on September 29, 2008, alleging disability beginning February 13, 2008.  (R. 10, 165-67).  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 10, 67-68).  Plaintiff's request was granted, and Plaintiff appeared with

counsel for a hearing before ALJ James Harty on July 7, 2010.  (R. 10, 37).  At the hearing, Plaintiff amended her onset date to September 29, 2008, and testimony was taken from Plaintiff and from a vocational expert.  (R. 10, 37-66).

On August 13, 2010, ALJ Harty issued his opinion finding that Plaintiff has significant nonexertional limitations including postural and mental limitations, but that she is able to perform work at all exertional levels.  (R. 10-23).  The ALJ recognized that Plaintiff "previously received supplemental security income disability payments from 1993 until July, 2004 under the special provisions for individuals who had not attained age 18."  (R. 10).  He noted that Plaintiff's benefits were terminated in July 2004 because of medical recovery.  Id.  He determined that although Plaintiff has no past relevant work within the meaning of the Act, there are jobs in significant numbers in the economy that she is able to perform.  (R. 22-23).  Consequently, he found that Plaintiff is not disabled within the meaning of the Act, and denied her application for SSI benefits.  (R. 23).

Plaintiff sought review of the ALJ's decision, and submitted a Representative Brief to the Appeals Council.  (R. 6, 262-63).  The Council made the Brief a part of the administrative record in this case, but found that it provided no basis for changing the ALJ's decision, found no reason under Social Security Administration rules to review the decision, and denied Plaintiff's request for review.  (R. 1-4).  Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 1);  Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review of that decision. (Doc. 1).

## II.    Legal Standard

2

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)).  Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months.  Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. § 416.920 (2010);[1] Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity

---

[1]The Commissioner's decision in this case was issued on August 13, 2010, and, unless otherwise noted, all citations to the Code of Federal Regulations in this opinion refer to the 2010 edition of 20 C.F.R. Parts 400 to 499, Revised as of April 1, 2010.

of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).
<u>Williams</u>, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses
claimant's residual functional capacity (RFC).  20 C.F.R. § 416.920(e).  This assessment
is used at both step four and step five of the sequential evaluation process.  <u>Id.</u>

The Commissioner next evaluates steps four and five of the sequential process--
determining whether claimant can perform past relevant work; and whether, considering
vocational factors of age, education, and work experience, claimant is able to perform
other work in the economy.  <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084).
In steps one through four the burden is on claimant to prove a disability that prevents
performance of past relevant work.  <u>Blea</u>, 466 F.3d at 907; <u>accord</u>, <u>Dikeman v. Halter</u>,
245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751 n.2.  At step five, the
burden shifts to the Commissioner to show there are jobs in the economy within
Plaintiff's RFC.  <u>Id.</u>; <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in assessing RFC by failing to assess adequate
limitations resulting from her degenerative disc disease and by failing to adequately
explain why he did not assess exertional limitations.  (Pl. Br. 9-12).  She claims he failed
to develop the record sufficiently to ascertain an RFC or to evaluate her mental
impairments, and failed to give sufficient weight to the opinion of her treating nurse-
practitioner.  <u>Id.</u> 12-17.  The Commissioner argues that the ALJ adequately developed the
record to ascertain an RFC and to evaluate mental impairments and properly discounted
the opinion of Ms. Friesen, Plaintiff's treating nurse-practitioner.  (Comm'r Br. 5-7).  He

argues that the ALJ properly assessed an RFC which is supported by substantial record evidence.  Id. at 7-8.  The court finds no error in the decision, and will begin its review by discussing Plaintiff's allegation of failure to develop the record.

## III.    Duty to Develop the Record

Plaintiff claims the ALJ failed to develop the record sufficiently to ascertain an RFC or to evaluate her mental impairments.  (Pl. Br. 12-17).  Plaintiff argues that because the ALJ failed to adequately develop the record, his determination that Plaintiff had no exertional limitations was conclusory and unsupported, and there was no record evidence upon which to rely in finding that Plaintiff has no exertional limitations or that Plaintiff's obesity causes only minimal vocational limitations as the ALJ did.  Id. at 13-14.  Plaintiff argues that the opinions of her treating nurse-practitioner, Ms. Friesen, and treating social worker, Ms. Stutley, "established the reasonable possibility of the existence of a disability," and imposed a duty on the ALJ to order a consultative examination regarding her mental impairments.  Id. at 16-17.  The Commissioner argues that there was no conflict in the medical evidence which required further development, the evidence was not inconclusive, additional tests were not necessary to explain any ambiguity in the evidence, and therefore there was no need to order a consultative examination or further develop the record.  He argues that the record evidence supports the ALJ's decision, and that no additional evidence is required.  (Comm'r Br. 4-7).

Plaintiff's argument forgets that in a Social Security case the burden of proof is on Plaintiff to provide evidence that she is disabled.  Blea, 466 F.3d at 907; accord,

Dikeman, 245 F.3d at 1184; Williams, 844 F.2d at 751 n.2.  However, because disability

proceedings are nonadversarial, the courts and the Commissioner have also recognized

the ALJ's duty to ensure that an adequate record has been developed.  The Tenth Circuit

has explained that duty:

> "It is beyond dispute that the burden to prove disability in a social security
> case is on the claimant."  Hawkins v. Chater, 113 F.3d 1162, 1164 (10th
> Cir. 1997); 20 C.F.R. § 404.1512(a) ( "[Y]ou must bring to our attention
> everything that shows that you are ... disabled.").  Nevertheless, because a
> social security disability hearing is a nonadversarial proceeding, the ALJ is
> "responsible in every case 'to ensure that an adequate record is developed
> during the disability hearing consistent with the issues raised.' "  Hawkins,
> 113 F.3d at 1164 (quoting Henrie v. United States Dep't of Health &
> Human Servs., 13 F.3d 359, 360-61 (10th Cir. 1993)); 20 C.F.R. § 404.944
> (requiring the ALJ to "look[ ] fully into the issues").  Generally, this means
> that the "ALJ has the duty to ... obtain [ ] pertinent, available medical
> records which come to his attention during the course of the hearing."
> Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996).  Moreover, the ALJ's
> "duty is heightened" when a claimant, like Mr. Madrid, appears before the
> ALJ without counsel.  Henrie, 13 F.3d at 361; Musgrave v. Sullivan, 966
> F.2d 1371, 1374 (10th Cir. 1992) (same); see also Dixon v. Heckler, 811
> F.2d 506, 510 (10th Cir. 1987) ("The [ALJ's] duty of inquiry takes on
> special urgency when the claimant has little education and is unrepresented
> by counsel.").

Madrid v. Barnhart 447 F.3d 788, 790 (10th Cir. 2006).  As the Commissioner points out,

however, the duty to develop the record consistent with the issues raised "is not a panacea

for claimants . . . which requires reversal in any matter where the ALJ fails to exhaust

every potential" line of inquiry.  Glass v. Shalala, 43 F.3d 1392, 1396 (10th Cir. 1994).

In this case, Plaintiff was represented before the ALJ by counsel, and it was her

burden to prove that she has exertional limitations and that her obesity causes more than

minimal vocational limitations.  Plaintiff admits that the record in this case contains

7

treatment notes from "repeated trips to Hunter Health Clinic because of back pain, and contains an MRI that found [Plaintiff] suffered from degenerative disk disease." (Pl. Br. 13). She does not point to evidence in the administrative record suggesting particular exertional limitations in this case which are caused by back pain, by degenerative disc disease, or by obesity. She does not argue that consultative examinations, if they were obtained, would show specific evidence which is not otherwise available in the record. Rather, she appears to argue that the mere presence of back pain and of degenerative disc disease requires finding exertional limitations, and the mere presence of obesity requires finding that it causes more than minimal vocational limitations, and that if the ALJ does not draw the necessary inferences, he must secure additional consultative examinations until one of them produces evidence supporting those inferences.

As Plaintiff admits, the record contains evidence regarding both her physical impairments and her mental impairments going back as far as 1998. The record contains both treatment notes and medical opinions provided by nurse-practitioner Friesen, and by social worker Stutley. Moreover, the record contains numerous other medical treatment records. Plaintiff points to no pertinent, available medical records which should have been, but were not, secured by the ALJ. Other than her disagreement with the findings of the ALJ, Plaintiff points to no issue raised in this case about which there is insufficient evidence for the ALJ to make a decision and which therefore requires the ALJ to secure a consultative examination. Moreover, she cites no authority for the proposition that the mere presence of back pain and of degenerative disc disease requires finding exertional

8

limitations, or that the mere presence of obesity requires finding more than minimal

vocational limitations caused thereby.  Plaintiff has shown no error in the ALJ's failure to

seek additional records or to order a consultative examination.  Plaintiff's real complaint

is with the ALJ's evaluation of the "other" medical source opinions of her nurse-

practitioner and of her social worker.  The court will now address these alleged errors.

## IV.  Evaluation of "Other" Medical Source Opinions

Plaintiff claims that Ms. Friesen's opinion should have been accorded either

controlling weight or at least deference as a treating source opinion, but that the ALJ

erroneously disregarded it.  (Pl. Br. 14-15).  She also argues that the ALJ erroneously

used parts of Ms. Stutley's opinion to support his finding of nondisability while

dismissing the Global Assessment of Functioning (GAF) scores of 41 and 44 assigned by

Ms. Stutley, and that he also erroneously used parts of Ms. Friesen's treatment notes to

support his findings while ignoring her opinion regarding limitations.  (Pl. Br. 16).  She

argues that this constitutes improper picking and choosing among the medical evidence.

The Commissioner argues that the ALJ properly evaluated Ms. Friesen's opinion and that

there is no need for further inquiry regarding Plaintiff's mental impairments.

### A.  The ALJ's Analysis

The ALJ found that Plaintiff has severe mental impairments consisting of attention

deficit hyperactivity disorder (ADHD), bipolar II disorder, personality disorder,

oppositional defiant disorder (ODD), post traumatic stress disorder (PTSD), depressive

disorder, and bereavement.  (R. 12).  He found that the record evidence does not establish

a medically determinable learning disorder.  (R. 14).  He summarized Plaintiff's

outpatient mental health treatment with the Prairie View Psychiatric Hospital from 1998

through August, 2005 and her mental health treatment at Youthville Family Consultation

Service from 2002 through June 2010.  Id. at 12-13.  In his RFC assessment, the ALJ

supplemented his discussion of Plaintiff's mental health treatment and also summarized

Plaintiff's treatment with COMCARE.  Id. at 18.

     The ALJ recognized that nurse-practitioner Friesen had treated Plaintiff at

COMCARE, and summarized the "assessments" which were prepared by Ms. Friesen in

October 2009 and June 2010.  Id. at 19-20 (citing Exs. 17F, 22F (R. 743-45, 873-75)).  He

acknowledged that a psychiatrist, Dr. Lear had also signed the "assessment" forms

prepared by Ms. Friesen.  The ALJ noted that Dr. Lear is an acceptable medical source

but he found that Dr. Lear had never seen Plaintiff in treatment and accorded his opinion

"the same weight as that of Ms. Friesen."  (R. 21).

     The ALJ stated he discounted Ms. Friesen's opinion because she is not an

acceptable medical source and because her assessment did not explain the basis for the

limitations expressed.  Id. at 20.  He went on to explain that much of Ms. Friesen's

treatment notes reflected positively on Plaintiff's mental functioning.  He made several

specific comments justifying his determination to discount Ms. Friesen's opinion:

(1) "The claimant reported that she did much better when taking medications, but even

when not taking medications, Ms. Friesen did not note significant problems in the

claimant's mental functioning other than distractibility."  Id. (citing Exs. 2F; 7F; 16F; 19F

(R, 326-405, 542-48, 707-42, 768-82)).  (2) "Ms. Friesen's objective records do not

support the marked limitations described on the assessment.  [(3)] The limitations

described on the assessments are not consistent with the claimant's daily activities,

including daily interactions with friends and the ability to follow instructions to perform

assigned tasks while staying at the shelter."  Id.  He concluded his analysis by stating that

Ms. Friesen's "assessments have not been provided substantial weight in any area except

to show that the claimant should be restricted to simple, routine repetitive tasks, avoid a

fast paced production environment, deal with relatively few work place changes, and

avoid more than occasional workplace interactions with others."  Id.

   The ALJ also recognized that social worker Stutley had provided Plaintiff

outpatient therapy at Youthville, and summarized that therapy and the "assessment"

which Ms. Stutley prepared in June 2010.  (R. 20-21).  Once again, he discounted Ms.

Stutley's opinion because she is not an acceptable medical source and because her

assessment did not explain the basis for the limitations expressed.  Id. at 20.  As with Ms.

Friesen, he explained that much of Ms. Stutley's therapy notes reflect positively on

Plaintiff's mental functioning.  Id. at 20-21.  He found that Ms. Stutley's "diagnoses and

findings were indicative of only moderate limitations and not consistent with the assigned

GAF scores of 41 and 44."  Id. at 21.  Finally, he accorded "substantial weight" to Ms.

Stutley's opinion in so far as it regarded Plaintiff's "restriction to simple, routine,

repetitive tasks requiring no more than occasional interactions with others and involving

relatively few workplace changes."  Id.  The ALJ also noted that he found Plaintiff should

only travel or use public transportation in commuting to and from work, "based upon the opinions of Ms. Friesen and Ms. Stutley regarding limitations in this area." Id.

**B.      Standard for Evaluating "Other" Medical Source Opinions**

In accordance with the regulations, an "acceptable medical source" includes only certain named classes of professionals:  licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.  20 C.F.R. § 416.913.  Nurse-practitioners and social workers are among another group of health-care providers called "other" medical sources from whom the Commissioner will accept and use evidence showing the severity of a claimant's impairment(s) and how the impairment(s) affects claimant's ability to work.  Id. § 416.913(d).  "Medical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions." Id. § 416.927(a)(2).  A "treating source" must be an "acceptable medical source," Id. § 416.902, and a medical opinion from a "treating source" may be given controlling weight in certain circumstances.  20 C.F.R. § 416.927(d)(2).

Applying the regulations, a nurse-practitioner or a social worker is an "other" medical source, not an "acceptable medical source" or a "treating source."  A nurse

12

practitioner's or a social worker's opinion is not, strictly speaking, a "medical opinion," and is never entitled to controlling weight.

Recognizing the reality that an increasing number of claimants have their medical care provided by health care providers who are not "acceptable medical sources"--nurse-practitioners, physician's assistants, social workers, and therapists, the Commissioner promulgated Social Security Ruling (SSR) 06-3p.  West's Soc. Sec. Reporting Serv., Rulings 327-34 (Supp. 2012).  In that ruling, the Commissioner noted:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.  Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

Id., Rulings, 330-31(emphasis added).

SSR 06-3p explains that in cases where a treating source opinion is not given controlling weight, opinions of nurse-practitioners and social workers will be evaluated using the regulatory factors for evaluating all medical opinions.  Id. at 331-32 (citing 20 C.F.R. § 416.927).  The ruling explains that the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the

13

case." Id. at 333; see also, Frantz v. Astrue, 509 F.3d 1299, 1300 (10th Cir. 2007) (remanding for consideration of an "other source" opinion in light of SSR 06-3p).

### C.   Analysis

The ALJ found that Dr. Lear is not a "treating source"[2] as defined in the regulations.  (R. 21).  Consequently, his opinion may not be accorded "controlling weight," and is not worthy of the deference due a treating source opinion as explained in Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003) and Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).  Therefore, and unremarkably, the ALJ accorded Dr. Lear's opinion (as expressed in the document prepared by Ms. Friesen) the same weight as the concurrent opinion of Ms. Friesen.  Plaintiff does not allege error in this determination. What she does claim is that Ms. Friesen's opinion should have been given controlling weight or at least deference as a treating source opinion.

As the court's statement of the applicable standard makes clear, a nurse-practitioner such as Ms. Friesen is not an acceptable medical source but is an "other" medical source.  Therefore, she is not a "treating source "as that term is defined in the regulations, and her opinion is not technically a "medical opinion," and may never be accorded controlling weight.  Moreover, while her opinion is "important and should be evaluated on key issues such as impairment severity and functional effects," it is not

---

[2]The regulations define a "Treating source" as an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. § 416.902.

accorded the deference due a treating source opinion.  Rather, it is to be weighed in

accordance with the regulatory factors for weighing all medical source opinions provided

in 20 C.F.R. § 419.927.

That is what the ALJ did here.  Despite Plaintiff's assertion that the ALJ did not

properly consider the regulatory factors, the ALJ's explanation of the weight accorded

Ms. Friesen's opinion, and his reasons for that weight reflect consideration of the

regulatory factors and is a proper application of the standard for evaluating "other" source

medical opinions.  The court finds no error in the evaluation of Ms. Friesen's opinion.

Plaintiff's arguments with regard to Ms. Stutley's opinion were made within the

context of arguing that the ALJ failed to properly develop the record because he did not

order a mental consultative examination.  (Pl. Br. 15-17).  Moreover, Plaintiff does not

specifically argue that the ALJ erred in the weight he accorded Ms. Stutley's opinion.

That is likely the reason the Commissioner did not address the ALJ's weighing of Ms.

Stutley's opinion.  In any case, as the court's summary above reveals, the ALJ properly

applied the standard for weighing "other" medical source opinions in accordance with

SSR 06-3p.  He weighed Ms. Stutley's opinion in accordance with the regulatory factors,

and explained the weight accorded to that opinion so that the court was able to follow his

reasoning and confirm the evidentiary basis for that determination.  More is not required.

Finally, Plaintiff argues that the ALJ erroneously used parts of Ms. Stutley's opinion to support his finding of nondisability while dismissing her GAF[3] scores of 41 and 44, and that he also erroneously used portions of Ms. Friesen's treatment notes to support his findings, while ignoring her opinion regarding limitations.  (Pl. Br. 16).  She argues that this was the error condemned by the Tenth Circuit in Frantz, 509 F.3d at 1302.  (Pl. Br. 16).

As Plaintiff suggests, the court in Frantz found that it was error for an ALJ to highlight evidence favorable to his findings while ignoring contrary evidence.  509 F.3d at 1302.  Specifically, the court said:

> Here, the ALJ referred to some of the evidence gleaned from Ms. Youngs' treatment notes but did not discuss what weight he gave to her opinion on the severity of Ms. Frantz's limitations and on the functional effect those limitations have on her overall ability to work.  He ignored evidence from Ms. Youngs that would support a finding of disability while highlighting evidence favorable to the finding of nondisability.  This was error.  "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."

---

[3]A Global Assessment of Functioning, or GAF, score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning."  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 32 (4th ed. text revision 2000).  GAF is a classification system providing objective evidence of a degree of mental impairment.  Birnell v. Apfel, 45 F. Supp. 2d 826, 835-36 (D. Kan. 1999) (citing Schmidt v. Callahan, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)).

GAF scores in the range of 41-50 indicate "**Serious symptoms . . . OR any serious impairment in social, occupational, or school functioning**."  DSM-IV-TR at 34 (emphasis in original).

Id. at 1302 (quoting Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996)).  The

problem with Plaintiff's argument is that is not what happened here.  Plaintiff points to

nothing regarding the evidence from Ms. Friesen or Ms. Stutley which the ALJ ignored.

Plaintiff asserts that the ALJ "dismissed" Ms. Stutley's treatment notes that

consistently assessed GAF scores of 41 and 44, and that he "ignored" the limitations

listed in Ms. Friesen's opinion.  (Pl. Br. 16).  To the contrary, the ALJ specifically noted

and cited the opinions provided by Ms. Friesen, listed each mental ability in which she

found Plaintiff to be markedly limited, and stated that Ms. Friesen had found Plaintiff

"moderately limited in the ability to perform most other mental work."  (R. 19).  As

discussed above, he then explained the weight accorded Ms. Friesen's opinion and the

reasons for that weight.  (R. 20).  He explained the portions of her opinion that he

discounted and the portions of her opinion to which he accorded weight.  Id.

The error which the Frantz court found was a failure to discuss the weight

accorded Ms. Youngs's opinion, and to mention favorable portions of her notes while

saying nothing about unfavorable portions.  That is not what happened here.  Here, the

ALJ discussed and explained his evaluation, and the court has determined that evaluation

was proper.  The ALJ specifically addressed the unfavorable portions of Ms. Friesen's

opinion and explained why he did not credit them.  It is not error for an ALJ to discount,

or even to reject, portions of the opinion of a healthcare provider so long as he applies the

correct legal standard, and so long as substantial record evidence supports his evaluation.

17

The ALJ's evaluation of Ms. Stutley's opinion is to the same effect. He expressly stated that he had rejected the GAF scores of 41 and 44 because Ms. Stutley's "diagnoses and findings were indicative of only moderate limitations and not consistent with the assigned GAF scores." (R. 21). He did not ignore those GAF scores. He addressed them and explained why he rejected them. Moreover, he accorded "substantial weight" to the remainder of Ms. Stutley's opinion. That analysis is not error.

Plaintiff's appeal to the unpublished opinion in <u>Lee v. Barnhart</u>, 117 F. App'x 674, 678 (10th Cir. 2004) is also unavailing. As Plaintiff suggests, the court in <u>Lee</u> noted that "[a] GAF score of fifty or less . . . does suggest an inability to keep a job." <u>Id.</u> (citing <u>Oslin v. Barnhart</u>, 69 F. App'x. 942, 947 (10th Cir. 2003)). The court concluded that in a case such as <u>Lee</u>, which was <u>decided at step two</u> in proceedings before the Commissioner, a GAF score of 50 or below should not be ignored. <u>Id.</u> However, this case was not decided at step two of the sequential evaluation process, and the ALJ did not ignore the GAF scores. He addressed the GAF scores, and explained why he rejected them. <u>Lee</u> does not require more.

V.     **RFC Assessment**

Plaintiff's final claim of error is that the RFC assessed did not include adequate limitations resulting from her degenerative disc disease and did not adequately explain why the ALJ found no exertional limitations. She argues that the ALJ did not discuss and explain any limitations from degenerative disc disease but merely stated that "the evidence does not show that the claimant has any exertional restrictions despite back pain

18

and obesity." (Pl. Br. 9) (quoting (R. 19)).  She notes that she was treated for back pain on several occasions and was diagnosed with degenerative disc disease, she points to her testimony that she can lift only two gallons of milk, but argues that the ALJ did not provide any reason for rejecting this evidence and did not provide an explanation for his findings.  Id. at 10-12.  The Commissioner argues that the RFC assessment is supported by substantial evidence, and points to evidence which in his view supports that assessment.  (Comm'r Br. 7-8).

Once again, Plaintiff's argument turns the burden of proof in a Social Security case on its head.  It is Plaintiff's burden between step three and step four of the sequential evaluation process to prove that she has exertional limitations.  Both before the ALJ and in this court, she relies upon the mere fact of back pain, obesity, and degenerative disc disease and on her testimony as to her exertional limitations to satisfy her burden to prove that she has limitations precluding work at all exertional levels.  Moreover, she fails to acknowledge the ALJ's finding that her testimony regarding limitations resulting from her impairments is not credible.  But, she does not allege error in that credibility finding.

Plaintiff points to no other record evidence providing exertional limitations which would preclude the ALJ's finding that she can perform work at all exertional levels.  And she does not point to medical, administrative, or legal authority for the proposition that the mere presence of obesity, back pain, and/or degenerative disc disease would preclude work at all exertional levels.

19

Plaintiff's argument that the ALJ did not provide an explanation for his conclusion that Plaintiff has no exertional limitations flies in the face of the ALJ's decision.  The court summarizes here in relevant part the decision as it relates to exertional limitations. The ALJ noted treatment records from August 2004 which indicated that Plaintiff "had graduated from high school and begun to participate in extracurricular activities."  (R. 13) (citing Ex. 21F/34 (R. 821)).  He discussed treatment records for Plaintiff's back pain:

> The claimant has intermittently sought treatment for low back pain radiating to the lower extremities.  Lumbar spine X-rays were negative except for mild degenerative disc disease (exhibits 4F/2; 6F/1,12; 18F/7,11,16 [(R. 485, 530, 541, 751, 755, 760)]).  Back pain was exacerbated by injuries such as slipping on the ice on July 27, 2009 (exhibit 14F/16 [(R. 602)]) and falling down stairs on March 15, 2010 (exhibit 18F/16 [(R. 760)]).  Based on lumbar spine MRI findings on May 17, 2010 of degenerative changes with disc protrusion and an[n]ular tear causing mild foraminal stenosis (exhibits 18F /21-22; 20F [(R. 765-66, 783-87)]), the claimant is determined to have a severe impairment of degenerative disc disease of the lumbar spine.

(R. 13).

> An examination on December 8, 2008 revealed tenderness in the spine and paraspinous muscle spasm (exhibit 4F/4 [(R. 487)]).  During an examination on May 27, 2010, the claimant had 5/5 strength in the extremities, and normal sensory and reflex functioning and normal gait. There was no edema or atrophy (exhibit 18F/2 [(R. 746)]).  Even when considering the effects of obesity, the claimant does not exhibit the inability to effectively perform fine and gross upper extremity manipulations or ineffective ambulation.

(R. 14).

He discussed Plaintiff's daily activities in relation to physical functioning:

> The claimant's daily activities do not document significant restriction in physical or mental functioning.  She was able to do the assigned chores

> while living in the shelter, was able to walk to the park or library during the
> daytime and attend the River Fest (exhibit 16F/21 [(R. 727)]).  She stayed at
> the shelter for the full month that she was allowed to remain there (exhibit
> 19F/12 [(R. 779)]).

(R. 17).

> He also expressed his analysis and conclusions regarding physical limitations:

> The claimant testified that she can walk 5 to 6 blocks with frequent rests.
> She reported that she can stand 30 to 45 minutes or sit 30 minutes with
> frequent adjustments, after which she has to stand and move around.  She
> testified that she can lift two gallons of milk.  The claimant's testimony,
> however, described daily activities characterized by extensive standing,
> walking, and sitting, particularly during the month that she was staying at
> the shelter.  The evidence does not show that the claimant has any
> exertional restrictions despite back pain and obesity.  However, the
> claimant's back pain is credibly exacerbated by balancing, stooping,
> kneeling, crouching, crawling, and stair and ramp climbing, and she should
> avoid more than occasional performance of these activities.  She should
> avoid all ladder, rope, or scaffold climbing in order not to exacerbate back
> pain and taking her weight into consideration.

(R. 19).

> The claimant appears to experience intermittent back pain, generally as a
> result of injury, which responds well to treatment.  She does not require
> ongoing prescription pain medication.  The claimant does not exhibit any
> problems in the ability to sit, stand, walk, and lift, but should avoid ladder,
> rope, or scaffold climbing and more than occasional performance of
> postural maneuvers in order not to exacerbate back pain.

(R. 21).

In the decision, the ALJ acknowledged and summarized the evidence regarding

Plaintiff's back pain, obesity, and degenerative disc disease.  Plaintiff points to no

evidence which was ignored or which requires the assessment of additional exertional

limitations.  The mere presence of these impairments does not require a finding of

exertional limitations.  The court recognizes that there are people with back pain, obesity, and/or degenerative disc disease who suffer from exertional limitations as a result of one or more of those impairments.  However, other than Plaintiff's testimony, which the ALJ found not credible, the record in this case is devoid of evidence of specific exertional limitations caused by those impairments.  Moreover, the ALJ explained his rationale for assessing particular physical limitations, he cited to record evidence in support of his assessment, and the court finds substantial record evidence supports that RFC assessment.

Plaintiff's appeal to Zblewski v. Schweiker, 732 F.2d 75, 78-79 (7th Cir. 1984); and Brant v. Barnhart, 506 F. Supp. 2d 476, 486 (D. Kan. 2007) for the proposition that an ALJ must articulate reasons to explain his RFC findings is unhelpful.  They require nothing more than the ALJ did here.  Plaintiff has shown no error in the decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 11<u>th</u> day of February 2013, at Kansas City, Kansas.


                              s:/ John W. Lungstrum
                              **John W. Lungstrum**
                              **United States District Judge**

22